UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| JENELL F. BRUNO, | ) |
|  | ) |
| Plaintiff(s), | ) |
|  | ) |
| v. | ) Case No. 4:20-cv-01178-SRC |
|  | ) |
| KILOLO KIJAKAZI, | ) |
| Commissioner of the Social Security | ) |
| Administration[1], | ) |
|  | ) |
| Defendant(s). | ) |

**Memorandum and Order**

Jenell Bruno requests judicial review, under 42 U.S.C. § 405(g), of the final decision of the Commissioner of Social Security denying her application for disability insurance benefits under Title II of the Social Security Act, 42 U.S.C. §§ 401–434.  The Court affirms the Commissioner's decision.

**I.    Procedural history**

Bruno filed a Title II application for disability benefits on December 29, 2017.  Tr. 10, 123–24.  The Social Security Administration initially denied her application on March 30, 2018, deciding that she was not disabled.  Tr. 10, 57–62.  On June 5, 2018, Bruno requested a hearing before an Administrative Law Judge.  Tr. 10, 63–64.  After the hearing, the ALJ denied Bruno's application in a decision dated October 18, 2019.  Tr. 7–18.  On July 10, 2020, the Appeals Council denied Bruno's request for review.  Tr. 1–6.  As such, the ALJ's decision stands as the final decision of the Commissioner.

---

[1] Kilolo Kijakazi became the Acting Commissioner of Social Security on July 9, 2021.  Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, the Court substitutes Kilolo Kijakazi for Andrew Saul as the defendant in this suit.  No further action need be taken to continue this suit by reason of the last sentence of section 205(g) of the Social Security Act, 42 U.S.C. § 405(g).

## II.     Decision of the ALJ

The ALJ determined that Bruno had not engaged in substantial gainful activity since her alleged on-set date of January 11, 2012.  Tr. 12.  The ALJ found that Bruno has severe impairments of degenerative disc disease and residuals of Lyme disease, as well as non-severe impairments of hypoglycemia and ophthalmic migraines.  Tr. 12–13.  The ALJ found that Bruno, through the date last insured, did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1.  Tr. 13.  Specifically, the ALJ determined that the evidence did not establish that Bruno met the criteria under Listing 1.04, which addresses presumptively disabling conditions of the spine.  *Id.*  While the ALJ acknowledged that one could reasonably expect Bruno's impairments to cause the alleged symptoms, the ALJ found that the claimed intensity, persistence, and limiting effects were not consistent with the medical evidence and other record evidence.  Tr. 13–14.  The ALJ also assessed a residual functional capacity (RFC) to perform light work under 20 C.F.R. § 404.1567(b).  Tr. 13.  *See* 20 C.F.R. §§ 404.1529, 416.929.

After reviewing the whole record to make an RFC determination, the ALJ noted that Bruno was able "to perform light work as defined in 20 CFR 404.1567(b) except [Bruno] can occasionally climb ramps and stairs, balance, stoop, kneel, crouch and crawl but can never climb ladders, ropes or scaffolds."  Tr. 13.  Additionally, the ALJ found that Bruno "cannot work at unprotected heights or around hazardous machinery.  [She] can frequently reach, handle and finger bilaterally.  [She] can have only occasional exposure to extreme temperatures or vibration."  *Id.*  The ALJ concluded that the totality of the evidence warranted an RFC categorization of "light work with postural, manipulative and environmental limitations."  Tr. 15.  Stated differently, given Bruno's relatively normal findings at numerous visits and her ability to

2

obtain "adequate symptom relief with only routine and conservative treatment," a light work RFC with those caveats fully incorporated Bruno's limitations.  Tr. 17.

The ALJ also found that Bruno could perform past relevant work as a customer service representative, which the vocational expert, who testified at the ALJ hearing, classified as sedentary.  Tr. 17, 43.  After considering Bruno's age, education, past work experience, and RFC, the ALJ found that sufficient jobs exist in the national economy that Bruno could perform, as such jobs are "generally and actually performed."  Tr. 17–18.  Thus, the ALJ concluded that Bruno was "not under a disability."  Tr. 18.  Bruno appeals, arguing that the ALJ erred in finding that her degenerative disc disease did not meet the criteria of Listing 1.04, and that the ALJ did not accord adequate weight to the opinion of her treating physician.  Doc. 18 at p. 3.

**III.    Legal standard**

A disability is defined as the inability "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months."  42 U.S.C. § 1382c(a)(3)(A).  A claimant has a disability "only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy[.]" § 1382c(a)(3)(B).

The Commissioner follows a five-step sequential process when evaluating whether the claimant has a disability.  20 C.F.R. § 416.920(a)(1).  First, the Commissioner considers the claimant's work activity.  If the claimant is engaged in substantial gainful activity, the claimant is not disabled.  20 C.F.R. § 416.920(a)(4)(i).

Second, if the claimant is not engaged in substantial gainful activity, the Commissioner looks to see whether the claimant has a severe "impairment [that] significantly limits [the] claimant's physical or mental ability to do basic work activities." *Hurd v. Astrue*, 621 F.3d 734, 738 (8th Cir. 2010); *see also* 20 C.F.R. § 416.920(a)(4)(ii).  "An impairment is not severe if it amounts only to a slight abnormality that would not significantly limit the claimant's physical or mental ability to do basic work activities." *Kirby v. Astrue*, 500 F.3d 705, 707 (8th Cir. 2007); *see also* 20 C.F.R. §§ 416.920(c), 416.920a(d).

Third, if the claimant has a severe impairment, the Commissioner considers the impairment's medical severity.  If the impairment meets or equals one of the presumptively disabling impairments listed in the regulations, the claimant is considered disabled, regardless of age, education, and work experience.  20 C.F.R. § 416.920(a)(4)(iii), (d).

Fourth, if the claimant's impairment is severe, but it does not meet or equal one of the presumptively disabling impairments, the Commissioner assesses whether the claimant retains the "residual functional capacity" ("RFC") to perform his or her past relevant work.  20 C.F.R. §§ 416.920(a)(4)(iv), 416.945(a)(5)(i).  An RFC is "defined as the most a claimant can still do despite his or her physical or mental limitations." *Martise v. Astrue*, 641 F.3d 909, 923 (8th Cir. 2011); *see also* 20 C.F.R. § 416.945(a)(1).  While an RFC must be based "on all relevant evidence, including the medical records, observations of treating physicians and others, and an individual's own description of his limitations," an RFC is nonetheless an "administrative assessment"—not a medical assessment—and therefore "it is the responsibility of the ALJ, not a physician, to determine a claimant's RFC." *Boyd v. Colvin*, 831 F.3d 1015, 1020 (8th Cir. 2016).  Thus, "there is no requirement that an RFC finding be supported by a specific medical opinion." *Hensley v. Colvin*, 829 F.3d 926, 932 (8th Cir. 2016).  Ultimately, the claimant is responsible for

4

*providing* evidence relating to his RFC and the Commissioner is responsible for *developing* the claimant's "complete medical history, including arranging for a consultative examination(s) if necessary, and making every reasonable effort to help [the claimant] get medical reports from [the claimant's] own medical sources." 20 C.F.R. § 416.945(a)(3) (emphasis added). If, upon the findings of the ALJ, it is determined that the claimant retains the RFC to perform past relevant work, he or she is not disabled. 20 C.F.R. § 416.920(a)(4)(iv).

Fifth, if the claimant's RFC does not allow the claimant to perform past relevant work, the burden of production to show the claimant maintains the RFC to perform work that exists in significant numbers in the national economy shifts to the Commissioner. *See Brock v. Astrue*, 674 F.3d 1062, 1064 (8th Cir. 2012); 20 C.F.R. § 416.920(a)(4)(v). If the claimant can adjust to other work that exists in significant numbers in the national economy, the Commissioner finds the claimant not disabled. 20 C.F.R. § 416.920(a)(4)(v). If the claimant cannot adjust to other work, the Commissioner finds the claimant disabled. *Id*. At Step Five, even though the *burden of production* shifts to the Commissioner, the *burden of persuasion* to prove disability remains on the claimant. *Hensley*, 829 F.3d at 932.

If substantial evidence on the record as a whole supports the Commissioner's decision, the Court must affirm the decision. 42 U.S.C. §§ 405(g), 1383(c)(3). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019). "[T]he threshold for such evidentiary sufficiency is not high." *Id*. Under this test, the court "consider[s] all evidence in the record, whether it supports or detracts from the ALJ's decision." *Reece v. Colvin*, 834 F.3d 904, 908 (8th Cir. 2016). The Court "do[es] not reweigh the evidence presented to the ALJ" and will "defer to the ALJ's determinations regarding the credibility of testimony, as long as those

determinations are supported by good reasons and substantial evidence." *Id*. The ALJ will not be "reverse[d] merely because substantial evidence also exists in the record that would have supported a contrary outcome, or because [the court] would have decided the case differently." *KKC ex rel. Stoner v. Colvin*, 818 F.3d 364, 369 (8th Cir. 2016).

**IV.      Discussion**

As noted, the ALJ determined that Bruno does not have a presumptively disabling condition under Listing 1.04, that she retains the RFC to perform light work with certain functional limitations, and that she can still perform her past relevant work as a customer service representative. Bruno argues that the Court should remand for two reasons. First, Bruno argues that the ALJ committed reversible error in finding that her degenerative disc disease did not meet the criteria for a *per se* disability under Listing 1.04. Second, Bruno argues that, in evaluating her symptoms, the ALJ failed to accord adequate weight to the opinions of her treating physician, Dr. John Jeremy Schiermeyer.

> **A.      Substantial evidence supports the ALJ's finding that Bruno's degenerative disc disease did not meet the criteria of Listing 1.04.**

Bruno argues that the ALJ erred in not finding her *per se* disabled at Step Three of the five-step sequential process. If a claimant's impairment meets the criteria of one of the presumptively disabling impairments listed in the regulations, the claimant is deemed disabled, regardless of age, education, and work experience. 20 C.F.R. § 416.920(a)(4)(iii), (d). Bruno argues that she meets the criteria of Listing 1.04, which addresses disorders of the spine. 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 1.04.

"To qualify for disability under a listing, a claimant carries the burden of establishing that his condition meets or equals all specified medical criteria." *McCoy v. Astrue*, 648 F.3d 605, 611 (8th Cir. 2011); *see also Sullivan v. Zebley*, 493 U.S. 521, 530 (1990) ("For a claimant to show

6

that his impairment matches a listing, it must meet *all* of the specified medical criteria."). An impairment that manifests only some of the listed criteria, no matter how severely, does not qualify. *Sullivan*, 493 U.S. at 530. While an ALJ must consider evidence of listed impairments and determine whether they meet or equal any of the listed impairments, "[t]he fact that the ALJ d[oes] not elaborate on this conclusion does not require reversal [where] the record supports h[is] overall conclusion." *Karlix v. Barnhart*, 457 F.3d 742, 746 (8th Cir. 2006).

When assessing whether a claimant's symptoms give rise to a listed disability, the ALJ must follow a two-step process. 20 C.F.R. § 404.1529(a). First, the ALJ must decide whether there exists a medically determinable impairment that could reasonably be expected to produce the claimant's symptoms, like pain. § 404.1529(b). Second, if such an impairment exists, the ALJ must decide the intensity, persistence, and limiting effects of the symptoms to determine how those symptoms limit the claimant's ability to work. § 404.1529(c)(1), (4). The ALJ considers not only objective medical evidence when evaluating the intensity, persistence, and limiting effects of the symptoms, but also: (1) the claimant's daily activities; (2) the location, duration, frequency, and intensity of the claimant's pain or other symptoms; (3) factors that precipitate and aggravate the symptoms; (4) the type, dosage, effectiveness, and side effects of any medication the claimant takes or has taken to alleviate pain or other symptoms; (5) treatments, other than medication, the claimant receives or has received for relief of pain or other symptoms; (6) any measures other than treatment the claimant uses or has used to relieve pain or other symptoms (e.g., lying flat on his or her back, standing for 15 to 20 minutes every hour, or sleeping on a board); and (7) any other factors concerning the claimant's functional limitations and restrictions due to pain or other symptoms. § 404.1529(c)(3).

7

Bruno contends that she meets all the criteria of Listing 1.04.  The listing, "Disorders of the spine", offers the following examples of such disorders:  herniated nucleus pulposus, spinal arachnoiditis, spinal stenosis, osteoarthritis, degenerative disc disease, facet arthritis, and vertebral fracture.  20 C.F.R. Pt. 404, Subpt. P, App. 1, § 1.04.  To qualify, the disorder must result in a compromise of a nerve root (including the cauda equina) or the spinal cord.  *Id.*  Additionally, the following must be present:

> A. Evidence of nerve root compression characterized by neuro-anatomic distribution of pain, limitation of motion of the spine, motor loss (atrophy with associated muscle weakness or muscle weakness) accompanied by sensory or reflex loss and, if there is involvement of the lower back, positive straight-leg raising test (sitting and supine); or
>
> B. Spinal arachnoiditis, confirmed by an operative note or pathology report of tissue biopsy, or by appropriate medically acceptable imaging, manifested by severe burning or painful dysesthesia, resulting in the need for changes in position or posture more than once every 2 hours; or
>
> C. Lumbar spinal stenosis resulting in pseudoclaudication, established by findings on appropriate medically acceptable imaging, manifested by chronic nonradicular pain and weakness, and resulting in inability to ambulate effectively, as defined in 1.00B2b.

*Id.*

The ALJ found that the medical evidence in Bruno's case did "not establish the existence of the above signs or symptoms." Tr. 13.  Although the ALJ concluded that Bruno indeed had degenerative disc disease, the ALJ found that the record demonstrated inconsistency with regard to disabling symptoms.  Tr. 15 (citing various exhibits).  The ALJ likewise noted sufficient medical evidence to conclude that Bruno had residuals of Lyme disease, but also found inconsistency with regard to disabling symptoms.  *Id*. (citing various exhibits, including "Ex. 7F/4" at Tr. 242 and "Ex. 7F/212," which the Court believes the ALJ mistakenly cited instead of Ex. 7F/2 at Tr. 240 and Ex. 7F/21 at Tr. 259, respectively).  For example, Bruno "consistently

8

had a normal gait," had "normal motor strength and tone," and was "healthy appearing" and "in no distress." *Id*. (citing exhibits). In other words, the ALJ agreed that Bruno indeed had a listed condition but determined that Bruno did not have the required systems under § 1.04 to qualify for a *per se* disability.

Bruno insists that the medical evidence shows that she is *per se* disabled under § 1.04A. Doc. 18 at pp. 1–2, 5. Bruno's argument lacks merit. Despite having the burden of production and persuasion in Step Three, she offers minimal evidence. Her argument does little more than direct the Court back to the record and Appendix 1, claiming in broad terms and without any specific citations that the medical evidence proves that she meets the requirements of § 1.04. Such vague assertions are decidedly unhelpful when the ALJ's ruling made extensive use of the medical record.

Moreover, in looking to the record, the Court finds substantial evidence to support the ALJ's ruling. In comparing the available medical and lay evidence with the requirements under Listing 1.04, the ALJ used the regulation's two-step process. Tr. 13–17. On the first step, the ALJ concluded that Bruno in fact suffers from a combination of medically determinable impairments that could reasonably be expected to cause some of the alleged symptoms. Tr. 14 (citing an exhibit and hearing testimony). Specifically, the ALJ noted that Bruno suffers from the residual effects of Lyme disease and from degenerative disc disease. Tr. 14–15. In support, the ALJ noted that Bruno had articular dysfunctions in the cervical, thoracic, and lumbosacral regions of her spine. Tr. 15 (citing an exhibit). Three separate MRI examinations also confirmed degenerative disc disease. *Id*. (citing exhibits). Likewise, Bruno's symptoms of low energy and numb hands aligned with the residual effects of Lyme disease. *Id*. (citing exhibits).

9

Yet, as the ALJ noted at the second step, inconsistencies exist between Bruno's claims about the intensity, persistence, and limiting effects of her symptoms and the evidence in the record.  *Id*.  Bruno can "engage[] in a somewhat normal level of daily activity and interaction," and was able to engage in "household chores, helping care for her minor daughter, going to the grocery store, preparing meals, performing self-care activities such as dressing and bathing, socializing with others, and displaying sufficient concentration and attention to drive and manage her finances." Tr. 16. (citing an exhibit and hearing testimony).  The ALJ found that these activities "were the same as those necessary for obtaining and maintaining employment," and noted the inconsistency between Bruno's activities and "her allegations of functional limitations." *Id*.

In sum, the ALJ found that Bruno had a qualifying condition under Listing 1.04, degenerative disc disease, but that the intensity, persistence, and limiting effects of her symptoms did not render her unable to work.  The ALJ reached that conclusion by examining all the evidence that Bruno produced, including her hearing testimony.  In reviewing the decision, the Court must affirm if substantial evidence supports the ALJ's decision.  Here, the Court finds that substantial evidence supports the ALJ's decision denying Bruno's claim that her symptoms qualified her degenerative disc disease as a *per se* disability under Listing 1.04.

**B.     The ALJ appropriately weighed Dr. Schiermeyer's medical opinion.**

Bruno contends that the ALJ erred by not according adequate weight to the opinion of her treating physician.  Doc. 18 at p. 5.  In support of this argument, Bruno cites 20 C.F.R. § 404.1527, which generally provides that the ALJ should give greater weight to the medical opinion of a treatment source.  Yet the regulations relevant to assessing medical opinions no

10

longer require ALJs to afford controlling or substantial weight to treating physicians.  20 C.F.R. §§ 404.1520c(a), 416.920c(a).

Instead, ALJs must evaluate the persuasiveness of medical opinions and prior administrative medical findings in light of several factors, the most important of which are supportability and consistency with the record.  *Id*.  ALJs must explain how they considered the factors of supportability and consistency in their decisions but need not explain how they considered the other factors.  20 C.F.R. § 404.1520c(b)(2); *see also Bonnett v. Kijakazi*, 859 F. App'x 19, 20 (8th Cir. 2021).  The supportability factor provides that "[t]he more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s) or prior administrative medical finding(s), the more persuasive the medical opinions or prior administrative medical finding(s) will be."  20 C.F.R. § 416.920c(c)(1) (2017).  The consistency factor states that "[t]he more consistent a medical opinion(s) or prior administrative medical finding(s) is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion(s) or prior administrative medical finding(s) will be."  20 C.F.R. § 416.920c(c)(1) (2017).  *See Starman v. Kijakazi*, No. 2:20-cv-00035-SRC, 2021 WL 4459729, at *3 (E.D. Mo. Sept. 29, 2021).

As noted by the ALJ, Dr. Schiermeyer opined in March 2019 that Bruno "could lift and carry ten pounds occasionally and less than ten pounds frequently"; that she "could need up to four unscheduled breaks a day lasting up to thirty minutes"; that she "could less than occasionally handle or finger but could occasionally reach or feel"; and that she "would be off task more than 20% of the day and miss more than three days a month."  Tr. 16 (quoting an exhibit).  Additionally, in April 2012, Dr. Schiermeyer had written "a letter on behalf of the

11

claimant . . . advising her to 'minimize her workload as much as possible and rest.'" *Id*. (citing an exhibit).

On the supportability factor, the ALJ found that Dr. Schiermeyer's treatment notes and exam findings did not support his opinion. *Id*. For example, his treatment records involved recording many of Bruno's subjective symptoms and complaints, but an objective antinuclear antibody screen (testing for autoimmune diseases) showed negative results. Tr. 17 (citing an exhibit). Furthermore, Dr. Schiermeyer's March 2019 treating-source statement largely took the form of a checkbox form with minimal explanations, which the ALJ reasonably found unpersuasive. *See Anderson v. Astrue*, 696 F.3d 790, 793 (8th Cir. 2012) ("[A] conclusory checkbox form has little evidentiary value when it cites no medical evidence, and provides little to no elaboration."); *O'Leary v. Schweiker*, 710 F.2d 1334, 1341 (8th Cir. 1983) ("Because of the interpretive problems inherent in the use of forms such as the physical capacities checklist, our Court has held that while these forms are admissible, they are entitled to little weight and do not constitute "substantial evidence" on the record as a whole."). Thus, in finding minimal evidence to support the March 2019 treating source statement, the ALJ reasonably concluded that Dr. Schiermeyer's medical opinion lacked supportability.

Next, on the consistency factor, the ALJ cited the many other treatment records that clashed with Dr. Schiermeyer's findings. Tr. 16–17. Various providers noted that Bruno was in no distress during medical examination. Tr. 17 (citing various exhibits). Various providers also noted that Bruno had normal motor strength and tone. *Id*. Despite her degenerative disc disease, Bruno consistently had a normal gait. *Id*. (citing exhibits). Considering this evidence, the ALJ found Dr. Schiermeyer's opinion unpersuasive and that Bruno "appears to get adequate symptom relief with only routine and conservative treatment." *Id*.

In sum, the ALJ properly considered the supportability and consistency factors in discounting Dr. Schiermeyer's opinion as unpersuasive, and substantial evidence supports this finding. The Court therefore affirms the decision of the ALJ.

The Court notes that even if it found substantial medical evidence in the record supporting Dr. Schiermeyer's opinion, it cannot remand simply because the Court "would have reached a different conclusion than the ALJ or because substantial evidence supports a contrary conclusion." *Igo v. Colvin*, 839 F.3d 724, 728 (8th Cir. 2016) (citing *Blackburn v. Colvin*, 761 F.3d 853, 858 (8th Cir. 2014)); *see also Goff*, 421 F.3d at 789 ("If, after reviewing the record, the court finds it is possible to draw two inconsistent positions from the evidence and one of those positions represents the ALJ's findings, the court must affirm the ALJ's decision."). Rather, the Court must affirm if the ALJ's finding "falls within the available zone of choice[.]" *Schouten v. Berryhill*, 685 F. App'x 500, 501 (8th Cir. 2017) (citation omitted). Here, the ALJ found that the overall medical record was inconsistent with Dr. Schiermeyer's opinion and that his opinion itself had little supporting evidence. Substantial evidence supports the ALJ's findings. Because the findings "falls within the available zone of choice," the Court affirms on this ground, as well.

## V.     Conclusion

This Court's review is limited to determining whether the ALJ's findings are based on correct legal standards and supported by substantial evidence. It does not substitute its own judgment for that of the ALJ. *McNamara v. Astrue*, 590 F.3d 607, 610 (8th Cir. 2010) (citing *England v. Astrue*, 490 F.3d 1017, 1019 (8th Cir. 2007)). Having found that substantial evidence supports the ALJ's conclusions and that the ALJ correctly applied the legal standards, the Court affirms the ALJ's decision.

Accordingly, the Court dismisses Bruno's [1] Complaint with prejudice.  A separate judgment will accompany this Memorandum and Order.  The Court directs the Clerk of Court to amend the case name and caption to reflect the substitution of Kilolo Kijakazi as Defendant.

So Ordered this 3rd day of December 2021.

_SLR. CR_
**STEPHEN R. CLARK**
**UNITED STATES DISTRICT JUDGE**